FILED
United States Court of Appeals
Tenth Circuit

May 12, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

JOHN OIRYA,

    Plaintiff - Appellant,

v.

BRIGHAM YOUNG UNIVERSITY,

    Defendant - Appellee.

No. 20-4052
(D.C. No. 2:16-CV-01121-BSJ)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **BACHARACH**, Circuit Judges.

_____

This appeal is brought by Mr. John Oirya, a Kenyan citizen who attended Brigham Young University. During his time there, BYU investigated his role in separate incidents involving sexual harassment, an effort to retaliate, perjury, and submission of false financial information.

---

[*]    We conclude that oral argument would not materially help us to decide the appeal. _See_ Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G). So we have decided the appeal based on the record and the parties' briefs.

    Our order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. _See_ Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

The investigation led BYU to expel Mr. Oirya, and he sued under Title IX and state law.

The district court granted summary judgment to BYU on these claims. Mr. Oirya appeals the award of summary judgment, and we affirm.

## I. We engage in de novo review, applying the same summary-judgment standard that governed in district court.

We apply de novo review, exercising our independent judgment to determine whether BYU showed the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *See Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016) (de novo review); Fed. R. Civ. P. 56(a) (standard for summary judgment). In determining whether BYU has made this showing, we view the evidence and all reasonable inferences favorably to Mr. Oirya. *Foster*, 830 F.3d at 1186.

## II. BYU was entitled to summary judgment on the Title IX claims.

Title IX prohibits discrimination based on gender. *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1250–51 (10th Cir. 2021). Invoking this prohibition, Mr. Oirya claims that BYU committed gender discrimination, favoring his accuser because she was female. Though BYU did credit the accuser's account, Mr. Oirya has not presented evidence tying the decision to his gender.

2

**A. Mr. Oirya hasn't presented evidence creating a reasonable inference of gender discrimination.**

Mr. Oirya asserts four theories of gender discrimination:

1. Erroneous outcome

2. Selective enforcement

3. Inadequate investigation

4. Deliberate indifference

All of these theories fail as a matter of law.

**1. Erroneous Outcome**

Title IX prohibits a university from reaching "an erroneous outcome in a student's disciplinary proceeding because of the student's sex." *Doe v. Baum*, 903 F.3d 575, 585 (6th Cir. 2018). Invoking this prohibition, Mr. Oirya contends that BYU erroneously found sexual harassment and an effort to retaliate against the accuser. We reject these contentions.

**a. Sexual Harassment**

Title IX is not violated just because a university believes a female accuser over a male respondent. *See Doe v. Univ. of Denver*, 952 F.3d 1182, 1196 (10th Cir. 2020). To the contrary, Mr. Oirya had to present evidence casting articulable doubt on the outcome and to show the influence of gender bias. *See Doe v. Trustees of Boston Coll.*, 892 F.3d 67, 91 (1st Cir. 2018); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).

Mr. Oirya presents no such evidence. He argues that he couldn't have committed sexual harassment because he didn't know the accuser. But this argument does not fit the accusation. Mr. Oirya was accused of putting a piece of paper on his lap, holding it with his left hand, unzipping his jeans, and putting his right hand inside his jeans to aggressively scratch his crotch. These accusations didn't imply or require Mr. Oirya's familiarity with the accuser.

### b.     Effort to Retaliate

BYU found not only sexual harassment but also an effort to retaliate against the accuser. Here too Mr. Oirya questions the accuracy of the outcome, alleging gender discrimination. But again we see no evidence of gender discrimination.

The parties agree that Mr. Oirya met with male classmates after the allegation had surfaced. BYU ultimately concluded that in these meetings, Mr. Oirya had tried to learn the accuser's identity. Mr. Oirya doesn't question this conclusion. But he insists that he wanted only to take the accuser to lunch and apologize. But once he learned the accuser's identity, he instead insulted her (calling her rude, strange, and hostile) and suggested that she was obsessed with pornography. Given these actions, Mr. Oirya's innocent explanation for the meeting does not cast meaningful doubt on BYU's finding of an effort to retaliate.

4

Mr. Oirya points out that two of the classmates said that he hadn't retaliated against the accuser. But they acknowledged that Mr. Oirya had tried to learn the accuser's identity.

Given Mr. Oirya's effort to learn the accuser's identity and his later treatment of her, no factfinder could reasonably blame gender discrimination for BYU's finding of an effort to retaliate.

### c. Plagiarism and Submission of False Financial Information

BYU also found plagiarism and submission of false financial information to the university. Mr. Oirya challenged these findings, but the district court granted summary judgment to BYU on this challenge.

On appeal, Mr. Oirya argues that the court erroneously reasoned that BYU had acted properly even if it had discriminated based on gender. But this argument misstates what the district court said. The court said only that Mr. Oirya had not disputed the allegations involving plagiarism and submission of false information.

But we may assume, for the sake of argument, that he had disputed these allegations. He still hasn't said how BYU's findings would reflect gender bias.

### 2. Selective Enforcement

Mr. Oirya claims not only an erroneous outcome but also selective enforcement. For this claim, Mr. Oirya identifies his accuser as a female who obtained more favorable treatment in the course of the university's

5

investigation. "But allegations regarding the University's treatment of [Mr. Oirya's] accuser do not support his claim that a female in similar circumstances—i.e., a female accused of sexual harassment [and retaliation]—was treated more favorably." *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 359 (8th Cir. 2020).

On appeal, Mr. Oirya theorizes that the district court granted summary judgment without considering whether BYU's factual determinations were supported by substantial evidence. But Mr. Oirya did not raise this theory in the amended complaint or in his response to the summary-judgment motion.

Mr. Oirya waited to present the theory in his motion for relief from the judgment. But it was too late for him to raise a new theory in that motion. *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). The court could not find a genuine issue of material fact on the presence of substantial evidence if BYU had no need to muster evidence supporting its factual finding.

### 3.    Inadequate Investigation

Mr. Oirya also bases gender bias on deficiencies in BYU's investigation. In our view, however, no reasonable factfinder could infer gender bias from BYU's steps to investigate the allegations. BYU interviewed eleven witnesses and gave Mr. Oirya ample opportunities to respond to each allegation.

Despite these opportunities, Mr. Oirya contends that BYU failed to interview the individuals who had taught the accuser, some of the students in the classroom when Mr. Oirya had allegedly committed sexual harassment, and students in the classroom in the days following the incident. But Mr. Oirya does not say what these individuals could have added or how BYU's investigative choices reflected gender bias.

### 4.    Deliberate Indifference

A university "may be liable under Title IX provided it (1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school." *Rost ex rel. K.C. v. Steamboat Springs RE-2 School District*, 511 F.3d 1114, 1119 (10th Cir. 2008).

Focusing on the element of deliberate indifference, Mr. Oirya asserts that BYU ignored his allegations that the accuser had lied. But BYU considered these allegations and rejected them. In the appeal, Mr. Oirya refers to no evidence suggesting deliberate indifference. In the absence of such evidence, BYU was entitled to summary judgment on this theory of liability.

**B.** **The district court didn't fail to consider Mr. Oirya's arguments about termination of his employment and prohibition from entering campus.**

Before the accusations surfaced, Mr. Oirya had worked at BYU as a graduate assistant. When BYU expelled him, it also terminated his employment as a graduate assistant and prohibited him from entering the campus.

Mr. Oirya disagrees with these actions and argues that the district court failed to consider his claims challenging termination of his employment and prohibition from entering the campus. But Mr. Oirya had not presented these as distinct claims. His claims involved only challenges to the university's investigation and decision to credit the accuser's account. Mr. Oirya presents no separate reason to question his termination of employment or prohibition from entering the campus based on findings of sexual harassment and an effort to retaliate. So the district court did not err by declining to consider these as distinct claims.

**III.** **The district court did not overlook Mr. Oirya's claim involving violation of immigration law.**

When foreign students study at a university, it must maintain an active record in the Student and Exchange Visitor Information System. So BYU maintained this record for Mr. Oirya while he was actively enrolled. When he was suspended, however, the university terminated this record.

Mr. Oirya claims that BYU violated the law by prematurely terminating this record.

In the complaint, Mr. Oirya had based the claim on federal law. But in responding to a motion to dismiss, he conceded that the motion was well-taken and agreed to dismissal. So the district court dismissed this claim. On appeal, he recharacterizes the claim as one based on state law. But in district court, he had based the claim on federal law. Given his concession in district court, no immigration law claim remained (under either federal or state law) when BYU moved for summary judgment.

Affirmed.

Entered for the Court


Robert E. Bacharach
Circuit Judge

9